IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

DENNIS MALIPURATHU,            )
                               )
            Plaintiff,         )
                               )
                               )      CIV-11-646-W
v.                             )
                               )
RAYMOND JONES, et al.,         )
                               )
            Defendants.        )

THIRD SUPPLEMENTAL REPORT  AND  RECOMMENDATION

Before the undersigned[1] in this 42 U.S.C. § 1983 action[2] filed by Plaintiff, a state

prisoner appearing *pro se* and *in forma pauperis*, is the Motion to Dismiss or, alternatively,

Motion for Summary Judgment (Doc. # 60) filed by Defendants McPhearson, Thiessen,

Kelly[3], Weedon, and Garcia.    Plaintiff has responded to this Motion (Doc. # 71), and

Defendants have replied to Plaintiff's response. (Doc. # 74).  Additionally, Defendants have

caused the filing of a Special Report (Doc. # 59) consistent with Martinez v. Aaron, 570 F.2d

317 (10th Cir. 1978), and the Order entered July 14, 2011 (Doc. # 15).

---

[1] The matter was referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).

[2] Plaintiff also invokes 42 U.S.C. § 1985(3) and 42 U.S.C. § 1986 as jurisdictional bases for his action. Amended Complaint (Doc. # 14), at 5.

[3] Although this Defendant's last name is spelled "Kelley" in Plaintiff's pleadings, Defendant Kelly avers that his last name is correctly spelled "Kelly." Special Report (Doc. # 59), Ex. 59 (Affidavit of Christopher S. Kelly).  Therefore, the correct spelling of Defendant Kelly's name is used herein.

1

Background and Amended Complaint

Plaintiff is currently incarcerated in the custody of the Oklahoma Department of Corrections ("DOC") serving sentences of two, concurrent, 15-year terms of imprisonment for drug-related convictions entered in the District Court of Custer County, Case No. CF-2007-296 and Case No. CF-2007-313.   In his Amended Complaint filed July 13, 2011 (Doc. # 14), Plaintiff names thirteen Defendants, including two state court judges, two prosecutors, the coordinator of the  Washita/Custer County Drug Court program,[4] several individuals employed by two private substance abuse treatment entities, and a private entity headquartered in Siloam Springs, Arkansas.   Plaintiff alleges multiple constitutional and statutory deprivations as well as violations of the Americans with Disabilities Act ("ADA"), all arising out of his unsuccessful participation in and termination from the Washita/Custer County Drug Court program.  Plaintiff appealed the Drug Court termination and judgment and sentence.  The termination and judgment and sentence were affirmed by the Oklahoma Court of Criminal Appeals on May 2, 2012.  http://www.oscn.net/applications (docket sheet in State of Oklahoma v. Dennis George Malipurathu, Case No. F-2010-867, last accessed May 24, 2012).

Plaintiff's Amended Complaint sets forth the following claims as to Defendants Weedon, Kelly, Garcia, Thiessen, McPhearson, Bentley, and Simmons Foods.

---

[4] Another individual, Mr. Hendrickson, named as a Defendant in the Amended Complaint was previously dismissed from the action.  Defendant Simmons Foods is not named in the caption of the Amended Complaint but is included as a Defendant in the body of the Amended Complaint.

A. <u>Count One</u>

In count one, Plaintiff alleges that Defendants Weedon, Kelly, Garcia, and Thiessen, in both their official and individual capacities, denied Plaintiff his "right to Equal Protection as other similarly situated drug court participants" and "[p]enalized and terminated Plaintiff from the program because he exercised his U.S. Constitutional First Amendment right." Amended Complaint, at 6.  As supporting facts, Plaintiff alleges that he participated in "D.A.R.P. Foundation" for a brief, two-month period from July 23, 2009 to September 24, 2009.  During this time period he was forced to cut his hair, although this violated a tenet of his Sikhism religion, and he was forced to attend Christian-based church services and "practice/recite Christian prayers daily." Amended Complaint, at 6-7.

Defendants Weedon and Kelly are identified as state court judges in Custer County, Oklahoma.  Defendant Garcia is identified as an assistant district attorney in Custer County and Washita County.   Defendant Thiessen is identified as the coordinator of the Washita/Custer County Drug Court program.   Defendants Weedon, Kelly, Garcia, and Thiessen are also identified as members of the Drug Court Team during the time period that Plaintiff participated in and was terminated from the Washita/Custer County Drug Court program.

B. <u>Count Two</u>

In count two, Plaintiff alleges Defendants Weedon, Kelly, Garcia, Thiessen, and Bentley are liable to Plaintiff for "Disabilities Discrimination" by "failing to give notice or make reasonable accommodations within D.A.R.P. Foundation (its employers) and Drug

Court Program." Amended Complaint, at 7.  Plaintiff cites 42 U.S.C. §§ 12111(9) and 12132 of the Americans with Disabilities Act ("ADA"), although Plaintiff does not specifically allege that he is seeking relief under the ADA.   As support for his § 1983 and/or ADA claims in count two, Plaintiff alleges that he is "(40%) permanent disable[d]" due to a "broken back" and that Defendants Thiessen, Weedon, Kelly, Garcia, and Bentley "fail[ed] to notify D.A.R.P. of Plaintiff's religious preference and disabilities before designation to this facility."  Amended Complaint, at 7.

Plaintiff also alleges in count two that "D.A.R.P." did not provide "accommodations" to Plaintiff with regard to doors, toilets, beds, and showers, and that "D.A.R.P." "failed to notify Simmons Foods of Plaintiff's physical limitations."  Finally, Plaintiff alleges that Defendant Simmons Foods did not provide "accommodations" to Plaintiff "for the disability during employment in September 13-24, 2009." Amended Complaint, at 8.

Defendant Bentley is identified as an employee of "D.A.R.P."  Defendant Simmons Foods is identified as an entity headquartered in Decatur, Arkansas, that employs "D.A.R.P." participants.

C. Count Three

In count three, Plaintiff alleges that Defendants Bentley and McPhearson denied Plaintiff's "rights"[5] by "discriminat[ing] upon the Plaintiff's ethnicity" and subjecting Plaintiff to discrimination by using "racial slurs." Amended Complaint, at 8.   Defendant

---

[5] Plaintiff has not identified a constitutional or statutory basis for this claim.

McPhearson is identified in the Amended Complaint as an assistant district attorney in Custer County.

D. Count Four

In count four, Plaintiff alleges his equal protection rights were violated by Defendants Garcia, Thiessen, and Weedon.  As support, Plaintiff alleges that these Defendants "prevented Plaintiff's participation on the [Washita/Custer County] Drug Court program because his religious beliefs are not from a western or 'Christian' based theology" and "where the physical environments prevented participation as other similarly situated participants." Amended Complaint, at 8.  As support, Plaintiff also alleges that Defendant Thiessen "failed to inform D.A.R.P. of religious differences and disabilities" when he "enforc[ed] a court ordered mandate to attend this facility." Amended Complaint, at 9.

Plaintiff alleges that Defendant Weedon "was notified on January 5, 2009, in writing, to the conditions and problems concerning the Plaintiff's disability," that Defendants Weedon, Kelly, and Thiessen "fail[ed] to protect the Plaintiff of his rights and designate[d] Plaintiff to an incompatible facility," and that Defendant Kelly "sanctioned the Plaintiff on July 1, 2009 to a facility where the Plaintiff does not qualify for participation, jeopardizing his completion of Drug Court in whole." Amended Complaint, at 9.

E. Count Five

In count five, Plaintiff alleges that Defendants Thiessen, Kelly, Weedon, and Garcia[6]

_____

[6] Plaintiff also named former Defendant Hendrickson in this claim.

denied Plaintiff his rights under the Due Process Clause of the Fourteenth Amendment by "fail[ing] to follow all the procedural guidelines set forth in the: handbook, performance contract, rules set forth by the Courts, Congress, State Constitution and the United States Constitution." Amended Complaint, at 9.  As  support, Plaintiff alleges that Defendants Weedon, Kelly, Thiessen, and Garcia "impose[d] sanctions (punishment) at will" in violation of the Washita/Custer County Drug Court Program handbook and Plaintiff's performance contract and in violation of the "Fourteenth Amendment." Amended Complaint, at 9-10.

Plaintiff further alleges in count five that "D.A.R.P. is an illegitimate treatment provider according to Oklahoma Drug Court Act" because it does not employ certified or licensed substance abuse counselors.  Amended Complaint, at 10.  Plaintiff also alleges that Defendants McPhearson, Weedon, Thiessen, Garcia, and Kelly[7] "provided privileged information to be used by the prosecution against Plaintiff without consent" in violation of the Oklahoma Drug Court Act and the Due Process Clause.  Amended Complaint, at 10.  He alleges this "privileged information" was "divulged during treatment sessions and investigations [and used] as means to end the Plaintiff's participation from the program." Amended Complaint, at 11.

F. Count Six

In count six, Plaintiff alleges that his "civil rights" were violated because "Brady material" or "exculpatory evidence" was "unavailable" to him or "unattainable" due to the

---

[7] Plaintiff also named former Defendant Hendrickson in this claim.

actions of Defendants Weedon, Kelly, Thiessen, Garcia, and Bentley.[8]  As support, Plaintiff refers to purported documentary evidence, including "Custer County Detention Center Book-in Records," which he alleges provide "proof of multiple punishments upon the Plaintiff" and "[c]orroborates Plaintiff's allegation of Deprivation of Liberty, Double Jeopardy, procedural Due Process rights, and Sixth Amendment," and the "D.A.R.P. Intake Application," which he alleges "corroborate Plaintiff's allegation of disabilities discrimination, Equal Protection, procedural Due Process rights, and Sixth Amendment." Amended Complaint, at 11-12. Plaintiff also refers to the "D.A.R.P. Contract: 'Medical History' Form," which he alleges "corroborates Plaintiff's allegation of disabilities discrimination, Equal Protection, procedural Due Process rights, and Sixth Amendment," and a "D.A.R.P. Contract," which he alleges "corroborates Plaintiff's allegation of disabilities discrimination, Equal Protection, procedural Due Process rights, and Sixth Amendment." Amended Complaint, at 12-13. Plaintiff next refers to the "New Hope of Mangum, Oklahoma; Pass Log Entry 1-24-2010," which he alleges "corroborates Plaintiff's allegation of false evidence, and Sixth Amendment right to confrontation." Amended Complaint, at 13.  Finally, Plaintiff describes a "Joint Petition; Workman's Compensation Court; on February 5, 2009 . . . [which] declares Plaintiff's disability rating" and "corroborates Plaintiff's allegation of disabilities discrimination, Equal Protection, procedural Due Process rights, and Sixth Amendment." Amended Complaint, at 13.

---

[8] Plaintiff also named former Defendant Hendrickson in this claim.

G. Count Seven

In count seven, Plaintiff alleges his "constitutional right [to be protected] from double jeopardy with multiple punishments from the same act" was violated by Defendants Thiessen, Kelly, Garcia, and Weedon.  As support, Plaintiff alleges that he was sanctioned on June 3, 2009, with "eight hours community service . . . for a late call-in" and this sanction was also "used by Drug Court for termination."  Amended Complaint, at 13-14. Plaintiff alleges Defendant Kelly sanctioned Plaintiff "on July 1-23, 2009, and September 25-November 13, 2009" with "jail-time" in the Custer County Detention Center and also directed Plaintiff to attend "in-patient therapy" on July 1, 2009.  Amended Complaint, at 14. Plaintiff alleges that "seeking [his] termination from the Drug Court program after a sanction already imposed violates Double Jeopardy's multiple punishment prohibition."  Amended Complaint, at 14.

H. Count Eight

In count eight, Plaintiff alleges that he was subjected to procedural due process violations and "unjust punishment" or "[u]nusual [p]unishment" by Defendants Weedon, Kelly, Thiessen, Garcia, and McPhearson because he was not provided notice of the reason for the "unjust[ ]" "imposition of the sanction - - in-patient therapy."  Amended Complaint, at 14.  Plaintiff also alleges that Defendants Weedon, Kelly, Thiessen, and Garcia violated the "due process lettering" of the Oklahoma Drug Court Act because he was terminated from the Washita/Custer County Drug Court program "within the '(6)-six month participation' clause/provision in conjunction with Count V-7(c)."  Amended Complaint, at 15.

8

Demands for Relief

Plaintiff seeks monetary damages against Defendants "in their personal and official capacities . . . ." Amended Complaint, at 19-21.  Plaintiff also seeks "injunctive relief" in order "to admonish and punish each of the Defendants' conducts and actions financially and publicly, in such a way as to discourage any similar actions." Amended Complaint, at 20-21.

Standard of Review - Motion to Dismiss and Motion for Summary Judgment

A motion to dismiss may be granted when the plaintiff has "failed to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  All well-pleaded facts, as distinguished from conclusory allegations, are accepted as true, and those facts are viewed in the light most favorable to the non-moving party. Beedle v. Wilson, 422 F.3d 1059, 1063 (10th Cir. 2005). To survive a motion to dismiss, a complaint must present factual allegations that "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  This review contemplates the assertion of "enough facts to state a claim to relief that is plausible on its face." Id. at 570.  Thus, "when the allegations in a complaint, however true, could not raise a [plausible] claim of entitlement to relief," the cause of action should be dismissed. Id. at 558.

A pro se plaintiff's complaint must be broadly construed under this standard. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the generous construction to be given the pro se litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  See Whitney

v. New Mexico, 113 F.3d 1170, 1173-1174 (10th Cir. 1997)(courts "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf"). A court evaluating a Rule 12(b)(6) motion to dismiss may consider the complaint as well as any documents attached to it as exhibits. Hall, 935 F.2d at 1112.

Additionally, the court must screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. 28 U.S.C. § 1915A(a). The same screening of a civil complaint filed *in forma pauperis* is required by 28 U.S.C. § 1915(e)(2). On review, the court must dismiss a complaint or any portion of it presenting claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B).

Summary judgment may be granted when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court reviews the evidence and inferences drawn from the record in the light most favorable to the nonmoving party. Burke v. Utah Transit Auth. & Local, 462 F.3d 1253, 1258 (10th Cir. 2006)(quotation omitted), cert. denied, 550 U.S. 933 (2007). A dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are "facts which might affect the outcome of the suit under the governing law." Id. "At the summary judgment stage, a complainant cannot rest on mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the

10

summary judgment motion will be taken to be true." Burke, 462 U.S. at 1258 (internal quotation marks and citations omitted).[9]  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(quotations omitted).

Oklahoma Drug Court Act

Because this case involves the operation of an Oklahoma drug court program, it is necessary to summarize the relevant state law.  Pursuant to the Oklahoma Drug Court Act, Okla. Stat. tit. 22, §§ 471-471.11, each district court in Oklahoma is authorized to establish a drug court program. Okla. Stat. tit. 22, § 471.1(B).  In Oklahoma, a drug court is a "judicial intervention process for substance abuse treatment of eligible offenders which expedites the criminal case, and requires successful completion of the plea agreement in lieu of incarceration." Okla. Stat. tit. 22, § 471.1(A).

Each drug court program is coordinated by a team consisting of a judge "to administer the program," a district attorney, a defense attorney, and "other persons designated by the drug court team . . . ." Okla. Stat. tit. 22, § 471.1(B), (D).  Drug court programs in Oklahoma "require a separate judicial processing system differing in practice and design from the traditional adversarial criminal prosecution and trial systems." Okla. Stat. tit. 22, § 471.1(D).

---

[9] In a prisoner civil rights case such as this one, the plaintiff's complaint is treated as an affidavit if it alleges facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury. Hall, 935 F.2d at 1111.

A drug court may request assistance from Oklahoma's Department of Mental Health and Substance Abuse Services ("DMHSAS"), which is by statute "the primary agency to assist in developing and implementing a drug court program. . . ." Okla. Stat. tit. 22, § 471.1(F).

Participation in an Oklahoma drug court program is voluntary, and the offender must submit a written request to be considered for drug court participation, which must be approved by the district attorney. Okla. Stat. tit. 22, § 471.2(B). This request for drug court participation must include a "clear statement" that the offender voluntarily agrees to "the terms and conditions of a treatment plan," voluntarily agrees to enter a guilty plea as part of a written plea agreement, agrees to "sign a performance contract with the court," and agrees to complete the program, including any treatment required by the drug court. Okla. Stat. tit. 22, § 471.2(B). The offender must also sign an eligibility form which clearly explains the roles and authority of the supervising staff, the district attorney, the defense attorney, the treatment provider, the offender, and the judge in the drug court program. Id.

If the offender's request to be considered for a drug court program is approved, the district attorney files the form with the drug court. Okla. Stat. tit. 22, § 471.2(D). The drug court then refers the offender for an investigation and sets a date for a hearing to determine the offender's eligibility for admittance into the program. Okla. Stat. tit. 22, § 471.3(B). This investigation is conducted by any "person designated by the judge to perform drug court investigations." Okla. Stat. tit. 22, §§ 471.4(A), (F). By statute, an offender's statements made or information gained during a drug court investigation are not admissible in the offender's pending criminal case. Okla. Stat. tit. 22, § 471.5(A)(1).

12

Once the investigation is completed, a hearing is conducted before the assigned drug court judge in which the judge determines whether the offender has voluntarily consented to the drug court program's requirements and whether the offender is eligible for drug court participation based upon the findings and recommendations of the individual(s) who conducted the investigation. Okla. Stat. tit. 22, § 471.6.  Prior to this hearing, the district attorney and defense attorney must negotiate the terms of the written plea agreement "with all punishment provisions specified" in the agreement. Okla. Stat. tit. 22, § 471.4(D).

At this hearing, the offender must voluntarily sign a number of court documents before admission to the drug court program, including  a "written performance contract requiring the offender to enter the treatment program as directed by the court and participate until completion, withdrawal, or removal by the court." Okla. Stat. tit. 22, § 471.6(4).  When an offender successfully completes the drug court program, the criminal case against the offender is dismissed if the offense was a first felony offense, or "[i]f the offender has a prior felony conviction, the disposition shall be as specified in the written plea agreement." Okla. Stat. tit. 22, § 471.9(A).  If the offender fails to complete the drug court program, the offender will be sentenced to serve a sentence which may include incarceration, as set forth in the written plea agreement.

Once an offender enters a guilty plea and begins the drug court program, the designated drug court judge "make[s] all judicial decisions concerning any case assigned to the drug court docket or program. . . . Reports from the treatment providers and the supervising staff shall be presented to the drug court judge as specified by the treatment plan

or as ordered by the court." Okla. Stat. tit. 22, § 471.7(A).  "Whenever possible, a Drug

Court team is to be established to oversee implementation of the Drug Court program with

regard to each Drug Court participant." Alexander v. State, 48 P.3d 110, 113 (Okla. Crim.

App. 2002).  At a minimum, the team should consist of the assigned judge, a district attorney,

and a defense attorney. Okla. Stat. tit. 22, § 471.1(D).  The Drug Court Team can designate

other members to assist. Id.  The presiding drug court judge monitors the progress of the drug

court participant, to include "ordering progressively increasing sanctions or providing

incentives, rather than removing the offender from the program when relapse occurs, except

when the offender's conduct requires revocation from the program." Okla. Stat. tit. 22,

§471.7(E).

Revocation from a drug court program "require[s] notice to the offender and other

participating parties in the case and a revocation hearing.  At the revocation hearing, if the

offender is found to have violated the conditions of the plea agreement or performance

contract and disciplinary sanctions have been insufficient to gain compliance, the offender

shall be revoked from the program and sentenced for the offense as provided in the plea

agreement." Okla. Stat. tit. 22, § 471.7(E).

Under Oklahoma law, "[t]he decision to revoke or terminate a Drug Court defendant

is within the trial judge's discretion." Lewis v. State, 220 P.3d 1140, 1143 (Okla. Crim. App.

2009).  A defendant has the right to appeal to the OCCA from a decision to revoke or

terminate his or her participation in a Drug Court program. Hagar v. State, 990 P.2d 894, 898

(Okla. Crim. App. 1999).  This is a "separate and distinct appeal, to be addressed on its own

merits." <u>Looney v. State</u>, 49 P.3d 761, 765 (Okla. Crim. App. 2002).

<u>Official Capacity Claims under § 1983</u>

Although Plaintiff does not identify which Defendants are sued solely in their official

capacities and which Defendants are sued in their official and individual capacities, it is clear

that Defendants Garcia, McPhearson, Thiessen, Judge Kelly, and Judge Weedon are state

officials who may be named in their official capacities in a cause of action under 42 U.S.C.

§ 1983. Giving the Amended Complaint a liberal construction, as the Court is required to

do, <u>Haines v. Kerner</u>, 505 U.S. 419 (1972), the Amended Complaint is construed to assert

§ 1983 claims against Defendants Garcia, McPhearson, Thiessen, Judge Kelly, and Judge

Weedon in the official capacities.

States, state officials named in their official capacities, and agencies or entities who

are considered "arms of the State" are entitled to immunity under the Eleventh Amendment

unless the State has waived its immunity. <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58,

71 (1989)(holding neither a State nor its officials acting in their official capacities are

"persons" under § 1983); <u>Pennhurst State School & Hosp. v. Halderman</u>, 465 U.S. 89, 98-

100 (1984)(holding "the principle of sovereign immunity is a constitutional limitation on the

federal judicial power," but that a State's sovereign immunity may be waived by an

unequivocal expression of waiver). Although in some circumstances Congress may

abrogate a State's sovereign immunity by legislation, 42 U.S.C. § 1983 does not abrogate

the sovereign immunity of a State. <u>See</u> <u>Quern v. Jordan</u>, 440 U.S. 332, 345 (1979)( § 1983

does not waive States' sovereign immunity). Oklahoma has not consented to Plaintiff's suit

against its state officials in their official capacities.  See Ramirez v. Okla. Dep't of Mental Health, 41 F.3d 584, 589 (10th Cir. 1994)("Oklahoma has not waived sovereign immunity against § 1983 claims in federal district court.").  Thus, the Eleventh Amendment bars Plaintiff's § 1983 action seeking damages from Defendants Garcia, Thiessen, McPhearson, Judge Kelly, and Judge Weedon under 42 U.S.C. § 1983 to the extent they are sued in their official capacities.

Accordingly, the Motion to Dismiss by Defendants McPhearson, Thiessen, Kelly, Weedon, and Garcia pursuant to Fed.R.Civ.P. 12(b)(6) should be granted as to Plaintiff's 42 U.S.C. § 1983 claims against them in their official capacities, and the Plaintiff's § 1983 claims against these Defendants in their official capacities should be dismissed with prejudice on the basis of sovereign immunity pursuant to Fed.R.Civ.P. 12(b)(6).

Claims for Injunctive or Declaratory Relief

Although "a suit for prospective relief against state officials named in their official capacities, based upon an ongoing violation of federal law, is not considered an action against the state within the meaning of the Eleventh Amendment," Muscogee (Creek) Nation v. Okla. Tax Comm'n, 611 F.3d 1222, 1234 (10th Cir. 2010), Plaintiff has not alleged an ongoing violation of federal law or sought prospective injunctive or declaratory relief. Furthermore, injunctive relief under 42 U.S.C. § 1983 is not available against Defendants Kelly and Weedon, who are state judges, for actions taken in their official capacities.

Moreover, because Plaintiff is no longer participating in the Washita/Custer County Drug Court program and he has been convicted and sentenced and transferred to the custody

16

of DOC, Plaintiff has not shown a threat or likelihood of further injury.  Plaintiff is therefore not entitled to injunctive or declaratory relief. See Schepp v. Fremont County, Wyo., 900 F.2d 1448, 1452 (10th Cir. 1990)(upholding dismissal of § 1983 claim for declaratory judgment against state judge who revoked plaintiff's probation because plaintiff was no longer on probation and he did not present a case of actual controversy on which declaratory judgment could be granted).

Accordingly, the Motion to Dismiss by Defendants McPhearson, Thiessen, Kelly Weedon, and Garcia should be granted as to Plaintiff's 42 U.S.C. § 1983 claims seeking injunctive or declaratory relief, and the Plaintiff's § 1983 claims against these Defendants seeking injunctive or declaratory relief should be dismissed with prejudice pursuant to Fed.R.Civ.P. 12(b)(6).

Absolute Judicial Immunity under § 1983

To the extent Defendants Judge Weedon and Judge Kelly are sued under § 1983 in their individual capacities, Defendants Weedon and Kelly seek their dismissal from the action on the ground of absolute judicial immunity.  Judges are immune from liability for damages or injunctive relief, including 42 U.S.C. § 1983 actions for alleged constitutional deprivations, when the action complained of was taken in their judicial capacity, even if that action "was in error, was done maliciously, or was in excess of [their] authority." Stump v. Sparkman, 435 U.S. 349, 356 (1978).  See Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985)(judicial "immunity applies 'however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff'")(quoting Bradley v. Fisher,

80 U.S. (13 Wall.) 335, 347 (1872)).   Immunity does not apply only when the judge's actions were "taken in the complete absence of all jurisdiction." Mireles v. Waco, 502 U.S. 9, 11-12 (1991).  See Stein v. Disc. Bd. of Supreme Court of New Mexico, 520 F.3d 1183, 1195 (10th Cir. 2008).  Plaintiff has not alleged any actions taken by Defendants Judge Weedon or Judge Kelly outside of their "judicial" capacities as state court judges presiding over criminal cases, including adjudicating and overseeing Plaintiff's participation in and removal from the Washita/Custer County Drug Court Program.  See Okla. Stat. tit. 20, § 120 (providing, in part, "the district judges of each district court judicial district shall have supervision of their respective district courts . . . .").  Thus, Defendants Judge Weedon and Judge Kelly are entitled to absolute judicial immunity with respect to Plaintiff's claims against them under 42 U.S.C. § 1983 for monetary damages and injunctive relief. See Hill v. State of Oklahoma, 210 F.3d 389 (Table), 2000 WL 358475 (10th Cir. Apr. 7, 2000)(unpublished order)(holding state district judge entitled to absolute judicial immunity from § 1983 action concerning her decision denying plaintiff's motion to enforce his plea agreement).

Hence, Defendants Weedon and Kelly's Motion to Dismiss Plaintiff's 42 U.S.C. §1983 claims against them should be granted on the basis of absolute judicial immunity, and Plaintiff's claims under § 1983 against Defendants Kelly and Weedon in their individual capacities should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) on this basis.

Absolute Prosecutorial Immunity under § 1983

Defendants Garcia and McPhearson seek their dismissal from Plaintiff's 42 U.S.C. § 1983 action against them in their individual capacities on the ground of prosecutorial immunity.  Plaintiff identifies Mr. Garcia as a prosecutor and a member of the Drug Court Team during the time period that Plaintiff participated in and was terminated from the Washita/Custer County Drug Court program.  Plaintiff identifies Mr. McPhearson as a prosecutor and a member of the Drug Court Team during the time period that Plaintiff participated in and was terminated from the Washita/Custer County Drug Court program.

"Prosecutors are entitled to absolute immunity for their decisions to prosecute, their investigatory or evidence-gathering actions, their evaluations of evidence, their determinations of whether probable cause exists, and their determination of what information to show the court." Nielander v. Bd. of County Comm'rs, 582 F.3d 1155, 1164 (10th Cir. 2009). Prosecutors preparing for or participating in the proceedings of a criminal prosecution, including preparation for and participation in court proceedings involving a diversionary drug court program, are acting as advocates of the State just as if they were performing the same functions in any other court. Imbler v. Pachtman, 424 U.S. 409, 410, 430-431 (1976)(holding state prosecutor who acted within scope of his duties in initiating and pursuing criminal prosecution was not amenable to suit under 42 U.S.C. § 1983 because actions taken by prosecutors "intimately associated with the judicial phase of the criminal process" are entitled to absolute prosecutorial immunity).  "[A]bsolute immunity may attach even to . . . administrative or investigative activities when these functions are necessary so

that a prosecutor may fulfill his function as an officer of the court." PJ ex rel. Jensen v. Wagner, 603 F.3d 1182, 1195 (10th Cir. 2010)(quotation omitted).

Plaintiff has alleged only actions taken by Defendants Garcia and McPhearson in their roles as prosecutors in the State's prosecution of Plaintiff and related duties integrally connected with judicial proceedings.  These actions include the prosecution of Plaintiff's criminal cases, the investigation of evidence for and the presentation of evidence at Plaintiff's plea and drug court eligibility hearings, the presentation of reports or evidentiary matters to the presiding Drug Court judge with respect to probationary conditions during the period of time that Plaintiff participated in the Drug Court program, and the investigation of evidence for and the presentation of evidence at Plaintiff's Drug Court termination hearing, even as to the prosecutors' alleged presentation of false or misleading testimony or withholding of exculpatory evidence in these proceedings.  For all of these acts, Defendants Garcia and McPhearson are entitled to prosecutorial immunity with respect to Plaintiff's claims against them in their individual capacities. See Burns v. Reed, 500 U.S. 478, 494 (1991)("Absolute immunity is designed to free the *judicial process* from the harassment and intimidation associated with litigation" and therefore absolute prosecutorial immunity extends to all "actions that are connected with the prosecutor's role in judicial proceedings. . . .")(emphasis in original).   Therefore, the Motion to Dismiss by Defendants Garcia and McPhearson should be granted on the basis of absolute prosecutorial immunity, and Plaintiff's claims under 42 U.S.C. § 1983 against Defendants Garcia and McPhearson in their individual capacities should be dismissed with prejudice on the ground of absolute

prosecutorial immunity pursuant to Fed. R. Civ. P. 12(b)(6).

Absolute Immunity for Judicial Officers under § 1983

Defendant Thiessen seeks his dismissal from Plaintiff's cause of action under 42 U.S.C. § 1983 against him for damages in his individual capacity on the ground of absolute judicial immunity. Plaintiff describes Mr. Thiessen as the coordinator of the Washita/Custer County Drug Court program and a member of the Drug Court Team during the time that Plaintiff participated in and was terminated from the Washita/Custer County Drug Court program.

The absolute immunity of judges extends to "'non-judicial officers where their duties had an integral relationship with the judicial process,'" including court clerks. Lundahl v. Zimmer, 296 F.3d 936, 939 (10th Cir. 2002)(quoting Whitesel v. Sengenberger, 222 F.3d 861, 867 (10th Cir. 2000)). Plaintiff has alleged only actions taken by Mr. Thiessen as a court official "acting under the command of a court decree or explicit instructions from a judge." Henricksen v. Bentley, 644 F.2d 852, 856 (10th Cir. 1981). Plaintiff does not allege that Defendant Thiessen wa responsible for implementing or developing or otherwise actively participated in the "D.A.R.P." or the New Hope treatment programs. Nor does he allege that Defendant Thiessen in any way coerced Plaintiff to participate in these treatment programs or that Defendant Thiessen specifically took any action to impose any sanctions upon Plaintiff during his participation in the Washita/Custer County Drug Court program. Plaintiff admits that Defendant Judge Kelly "imposed the sanction of in-patient therapy." Amended Complaint, at 13. Under Oklahoma law, the presiding Drug Court judge makes all decisions

concerning the probationary conditions and termination of a Drug Court participant.

Plaintiff's claims against Defendant Thiessen stem solely from Thiessen's actions undertaken as a part of his official duties, and these actions are integrally connected with the judicial process. For these actions as alleged by Plaintiff against Defendant Thiessen in his Amended Complaint, Defendant Thiessen is entitled to absolute immunity. See Trackwell v. U.S. Government, 472 F.3d 1242, 1247 (10th Cir. 2007)(when a court clerk "assists a court or judge in the discharge of judicial functions, the clerk is considered the functional equivalent of the judge and enjoys derivative [absolute judicial] immunity"). See also Thorne v. Hale, 2009 WL 3733344, at * 6 n. 1 (E.D. Va. Oct. 29, 2009)(unpublished op.)(holding drug court administrator was protected by derivative absolute judicial immunity because she acted in obedience to judicial order or under court's direction), aff'd, 370 Fed.Appx. 437, 2010 WL 1018048 (4th Cir. 2010)(unpublished order).

Therefore, Defendant Thiessen's Motion to Dismiss Plaintiff's § 1983 action against him should be granted, and Plaintiff's claims under 42 U.S.C. § 1983 against Defendant Thiessen in his individual capacity should be dismissed with prejudice on the ground of absolute judicial immunity pursuant to Fed. R. Civ. P. 12(b)(6).

Defendants Bentley and Simmons Foods

Plaintiff has named in his Amended Complaint two private Defendants, Defendant Bentley and Defendant Simmons Foods. Plaintiff alleges in the Amended Complaint that Defendant Simmons Foods, an Arkansas entity, "is an employer by contractual agreement to employ D.A.R.P. Foundation participants" and that Simmons Foods acted under color of

state law because it "employs participants who are court-ordered to attend the D.A.R.P. Foundation reporting directly to D.A.R.P. Foundation of the participants work ethics; D.A.R.P. then sends progress reports to Plaintiff's Drug Court Team." Amended Complaint, at 4.   Plaintiff alleges that Defendant Bentley acted under color of state law because he "is the Human Relations Director of D.A.R.P. Foundation and directly reports to the Custer/Washita County Drug Court Coordinator." Amended Complaint, at 2.

On June 9, 2011, the undersigned Magistrate Judge granted Plaintiff's request to proceed *in forma pauperis* and, pursuant to 28 U.S.C. § 1915(d), directed the Plaintiff to submit service papers so that the United States Marshal's Service could effect service of process. (Doc. # 5). See Olsen v. Mapes, 333 F.3d 1199, 1204 (10th Cir. 2003)("When a plaintiff is granted in forma pauperis status, the district court is required to serve process for the plaintiff.").   Plaintiff submitted the necessary papers for issuance of service of process upon the Defendants, and the Court's record reflects that Defendant Bentley was served with process on August 10, 2011, at his residence in Rogers, Arkansas. (Doc. # 26).   The summons directed toward Defendant Simmons Foods was returned unexecuted on August 25, 2011. (Doc. # 25).  On May 16, 2012, Plaintiff filed a motion for default judgment as to Defendant Bentley (Doc. # 133), arguing that Defendant Bentley had failed to plead or otherwise defend Plaintiff's action against him.

"The Due Process Clause of the Fourteenth Amendment operates to limit the power of a State to assert in personam jurisdiction over a nonresident defendant." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413-414 (1984).  Plaintiff bears the

burden of establishing personal jurisdiction over a defendant. <u>OMI Holdings, Inc. v. Royal Ins. Co.</u>, 149 F.3d 1086, 1091 (10th Cir. 1998).  Oklahoma's long-arm statute authorizes the exercise of any jurisdiction that is consistent with the Due Process Clause, such that personal jurisdiction exists if a defendant has minimum contacts with Oklahoma. <u>Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.</u>, 205 F.3d 1244, 1247 (10th Cir. 2000)(citing <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 291 (1980)). The "minimum contacts" standard is satisfied if (1) "the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities" or (2) the defendant has "sufficient contacts" with the forum State. <u>Helicopteros</u>, 466 U.S. at 414.

Plaintiff's pro se status does not excuse him from complying with the fundamental requirements of the Federal Rules of Civil Procedure. <u>Ogden v. San Juan County</u>, 32 F.3d 452, 455 (10th Cir. 1994).  Plaintiff has not alleged any basis upon which to assert personal jurisdiction over the nonresident Defendants Bentley and Simmons Foods.  Thus, the cause of action against Defendants Bentley and Simmons Foods should be dismissed without prejudice pursuant to 28 U.S.C. § 1915A(b) for lack of jurisdiction, and Plaintiff's motion (Doc. # 133) seeking a default judgment against Defendant Bentley should be denied.  <u>See Martinez v. Richardson</u>, 472 F.2d 1121, 1126 (10th Cir. 1973)(dismissal for lack of jurisdiction "is not an adjudication on the merits and therefore dismissal of the . . . claim must be without prejudice").  <u>See also</u> <u>Trujillo v. Williams</u>, 465 F.3d 1210, 1217 (10th Cir. 2006)(concluding that 28 U.S.C. § 1915 authorizes the *sua sponte* dismissal of claims when

24

personal jurisdiction is clearly absent).  Additionally, Plaintiff's "Motion Seeking Leave of this Court for Third Attempt to File [sic] Summons Upon Defendant Simmons' [sic] Foods" (Doc. # 118) should be denied.

Habeas Corpus as Only Remedy

Defendants McPhearson, Thiessen, Kelly, Weedon, and Garcia alternatively seek dismissal of Plaintiff's § 1983 claims of due process, Brady v. Maryland, 373 U.S. 83 (1963), and double jeopardy violations alleged in counts five, six, seven, and eight of the Amended Complaint on the ground that these claims are barred by Heck v. Humphrey, 512 U.S. 477 (1994).

In Heck, the Supreme Court recognized that damages may not be recovered in a 42 U.S.C. § 1983 action "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless the plaintiff first proves "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." Heck, 512 U.S. at 487.  "The purpose behind Heck is to prevent litigants from using a § 1983 action, with its more lenient pleading rules, to challenge their conviction or sentence without complying with the more stringent exhaustion requirements for habeas actions." Butler v. Compton, 492 F.3d 1277, 1279 (10th Cir. 2007)(citing Muhammad v. Close, 540 U.S. 749 (2004)(per curiam)).

In Crow v. Penry, 102 F.3d 1086, 1087 (10th Cir. 1996), the Tenth Circuit Court of

Appeals held that <u>Heck</u>'s bar applies to § 1983 actions challenging a parole revocation.  In an unpublished order, <u>Schwartz v. New Mexico Corr. Dep't of Probation and Parole</u>, 384 Fed.Appx. 726, 730, 2010 WL 2531456, * 4 (10th Cir. 2010), the Tenth Circuit held that <u>Heck</u> also applies to challenges to probation revocation by a state prisoner under the guise of a § 1983 action.

In <u>Wilkinson v. Dotson</u>, 544 U.S. 74 (2005), the Supreme Court reiterated that "state prisoners [must] use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement - either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody." <u>Id.</u> at 81 (emphasis in original).  In other words, "a state prisoner's § 1983 action is barred (absent prior invalidation) - no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) - *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." <u>Id.</u> at 81-82 (emphasis in original).

Plaintiff alleges in count five of the Amended Complaint that his termination from the Washita/Custer County Drug Court program violated his due process rights because Defendants Thiessen, Judge Kelly, Judge Weedon, and Garcia,[10] among other Defendants, did not follow the guidelines established under Oklahoma's Drug Court Act. Plaintiff also

---

[10] Plaintiff also named former Defendant Hendrickson in this claim.

alleges in count five that his termination from the Washita/Custer County Drug Court program was the result of prosecutorial misconduct. Specifically, Plaintiff alleges that Defendant McPearson "used privileged information" in seeking Plaintiff's termination from the Washita/Custer County Drug Court program. Amended Complaint, at 11. If proven, these allegations in count five would necessarily imply the invalidity of his Drug Court termination and also his current confinement as a result of his Drug Court termination and Custer County conviction and sentence.

Plaintiff alleges in count six that Defendants Weedon, Kelly, Thiessen, and Garcia, among other Defendants, denied Plaintiff his "civil rights" rights under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), to obtain and use exculpatory evidence in his Washita/Custer County Drug Court termination hearing. In this count, Plaintiff describes certain documents that he asserts would show that the Drug Court termination decision was obtained in violation of his due process rights, his Sixth Amendment rights to effective assistance of trial and appellate counsel, his right to confrontation of adverse witnesses, and his double jeopardy rights. If proven, the allegations in count six would necessarily imply the invalidity of his Drug Court termination and also his current confinement as a result of his Drug Court termination and Custer County conviction and sentence.

Plaintiff alleges in count seven that Defendant Thiessen, Kelly, Garcia, and Weedon, among other Defendants punished Plaintiff twice for the same offense, in violation of double jeopardy guarantees, when he was sanctioned with "eight hours community service" and later terminated from the Washita/Custer County Drug Court program. Plaintiff also alleges in

count seven that he was punished twice for the same offense in violation of double jeopardy guarantees when Plaintiff was sanctioned with "in-patient therapy" and later terminated from the Drug Court program.  Plaintiff further alleges in count seven that he was punished twice for the same offense in violation of double jeopardy guarantees when he was placed in a detention facility on two occasions in 2009 and later terminated from the Drug Court program.  If proven, these allegations would necessarily imply the invalidity of his Drug Court termination and also his current confinement as a result of his Drug Court termination and Custer County conviction and sentence.

In count eight, Plaintiff alleges that the grounds used to terminate him from the Washita/Custer County Drug Court program were not sufficient to support his termination and that Defendants Judge Weedon, Judge Kelly, Thiessen, and Garcia violated his due process rights by terminating him from the Drug Court program in contravention to provisions of the Oklahoma Drug Court Act.[11]  If proven, these allegations would necessarily imply the invalidity of his Drug Court termination and also his current confinement as a result of his Drug Court termination and Custer County conviction and sentence.

Plaintiff has not demonstrated that the Washita/Custer County Drug Court termination decision or his convictions and sentences entered in Custer County District Court have been invalidated.  Therefore, Plaintiff's § 1983 claims in counts five, six, seven, and eight seeking

---

[11] Plaintiff's remaining eighth amendment claim in count eight of a failure to provide him with adequate notice of reasons for the imposition of the sanction of in-patient substance abuse treatment falls squarely within the rubric of absolute judicial immunity accorded Defendants Weedon, Kelly, Thiessen, and Garcia, which has been addressed separately herein.

damages are barred by <u>Heck.</u>  Defendants McPhearson, Thiessen, Kelly, Weedon, and Garcia's Motion to Dismiss Plaintiff's § 1983 claims in counts five, six, seven, and eight seeking damages from them in their individual capacities should be granted, and these claims against Defendants McPhearson, Thiessen, Kelly, Weedon, and Garcia should be dismissed without prejudice pursuant to Fed.R.Civ.P. 12(b)(6) without prejudice for failure to state a claim upon which relief may be granted.

Because these claims are, in essence, claims challenging the validity of Plaintiff's Drug Court termination and his current confinement, Plaintiff's sole remedy for the claims is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  <u>See</u> <u>Wilkinson v. Dotson</u>, 544 U.S. 74, 78 (2005)(reiterating prior holdings that prisoner in state custody cannot use § 1983 action to challenge fact or duration of his confinement; "he must seek federal habeas corpus relief (or appropriate state relief) instead").  However, the Court should not construe the Amended Complaint to assert any claim for habeas relief because such a construction could effectively prevent Plaintiff from raising other claims challenging his Custer County Drug Court termination and convictions and sentences.  Moreover, there is nothing in the record of this action showing Plaintiff has exhausted requisite state court remedies concerning these claims.  Accordingly, the Court should decline to construe the Amended Complaint as alternatively seeking federal habeas relief concerning his Washita/Custer County Drug Court termination and the Custer County convictions and sentences pursuant to 28 U.S.C. § 2254.

29

Americans with Disabilities Act Claim

In count two of the Amended Complaint, Plaintiff alleges that Defendants Judge Weedon, Judge Kelly, Garcia, and Thiessen,[12] among other Defendants, violated his rights under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12132 et seq.[13] Plaintiff specifically alleges that Defendants violated 42 U.S.C. § 12111(9), which defines a "reasonable accommodation" for purposes of the ADA.

With respect to Plaintiff's claim in count two of violations of the ADA, Title II of the ADA applies to the services provided by state and local governments, 42 U.S.C. § 12132 (Title II applies to "public entities"). Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C. § 12132. State prisons are considered public entities for the purposes of an ADA claim. Penn. Dep't of Corr. v. Yeskey, 524 U.S. 206, 210 (1998). Plaintiff's ADA claim seeks damages not from a public entity, however, but from state and private individuals. "Title II authorizes suits by private citizens for money damages against public entities that violate § 12132." Guttman v. Khalsa, 669 F.3d 1101, 1112 (10th Cir. 2012).

The Supreme Court has held that "insofar as Title II [of the ADA] creates a private

---

[12] Plaintiff also names Defendant Bentley in count two, but the undersigned will not address these claims as to Defendant Bentley in light of the recommendation of dismissal with respect to this Defendant infra.

[13] Ibid.

cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." <u>United States v. Georgia</u>, 546 U.S. 151, (2006)(emphasis in original).   Thus, Plaintiff may bring claims under the ADA against a state or an individual defendant only in his or her official capacity. To the extent Plaintiff seeks damages for alleged violations of the ADA against Defendants Weedon, Kelly, Garcia, and Thiessen in their individual capacities, these claims must be dismissed with prejudice pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted.

Defendants Weedon, Kelly, Garcia, and Thiessen seek dismissal of the Plaintiff's claim of "disabilities discrimination"[14] or, alternatively, seek summary judgment concerning this claim.   However, Defendants have not specifically addressed Plaintiff's ADA claim. Defendants merely assert that they are absolutely immune from Plaintiff's action, that several of Plaintiff's claims are barred by <u>Heck</u>, <u>supra</u>, or that, alternatively, they are entitled to qualified immunity.   Even in their reply brief, these Defendants have not recognized Plaintiff's ADA claim in count one.   Thus, Defendants Weedon, Kelly, Garcia, and Thiessen's Motion to Dismiss Plaintiff's ADA claim in count two should be denied without

---

[14] Defendants have not specifically addressed Plaintiff's ADA claim.   To the extent Defendants Weedon, Kelly, Garcia, and Thiessen assert that they are also immune from Plaintiff's ADA claims under the Eleventh Amendment, the Court need not consider this thorny issue. <u>See</u> <u>Goergia</u>, 546 U.S. at 159 (explaining that courts should first "determine . . . on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II [of the ADA]; (2) to what extent such misconduct also violated the Fourteenth Amendment" before addressing the issue "(3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid").

prejudice to the extent it seeks the dismissal of Plaintiff's ADA claims against them in their official capacities.

Alternative Jurisdictional Bases for Action

In his Amended Complaint, Plaintiff states that he is asserting jurisdiction under 28 U.S.C. § 1331 as well as 42 U.S.C. § 1985(3) and 42 U.S.C. § 1986. Amended Complaint, at 5. Title 42 U.S.C. § 1985(3) was intended only to reach conspiracies "motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus." Tilton v. Richardson, 6 F.3d 683, 686 (10th Cir. 1993)(quotation omitted). To state a claim under §1985(3), the plaintiff must allege "that one or more of the conspirators did or caused any act in furtherance of the conspiracy . . . ." Plaintiff's Amended Complaint is devoid of any such allegation. Further, because Plaintiff has not stated a claim against Defendants Garcia, Kelly, McPhearson, Thiessen, and Weedon under § 1985, he has not stated a claim under §1986. See Taylor v. Nichols, 558 F.2d 561, 568 (10th Cir. 1977)("Inasmuch as the Section 1985 action is insufficient, the allegations under 42 U.S.C. Section 1986 also fail."). Accordingly, to the extent Plaintiff is alleging Defendants McPhearson, Thieesen, Kelly, Weedon, and Garcia are liable to him under 42 U.S.C. § 1985(3) and §1986, Plaintiff has failed to state a claim upon which relief may be granted, and these claims are *sua sponte* dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

§ 1983 Claims Based on State-Law Violation

Throughout his Amended Complaint, Plaintiff alleges various failures by Defendants to follow Oklahoma laws, regulations, or "procedural guidelines." He seeks damages from

Defendants McPhearson, Thiessen, Kelly, Weedon, and Garcia, among other Defendants, under 42 U.S.C. § 1983 for these alleged deficiencies. All of these state law deficiencies alleged by Plaintiff, even if accepted as true, "do not signify an unconstitutional denial of process." Guttman v. Khalsa, 669 F.3d 1101, 1115 (10th Cir. 2012)(citing Hicks v. City of Watonga, 942 F.2d 737, 746 n. 4 (10th Cir. 1991)).

The Oklahoma Drug Court Act provides that "[a]ll participating treatment providers shall be certified by the [DMHSAS] and shall be selected and evaluated for performance-based effectiveness annually by the [DMHSAS]." Okla. Stat. tit. 22, § 471.6(G).  Plaintiff complains that his rights under § 1983 were violated because DARP was not certified as a treatment provider by DMHSAS.  Plaintiff also complains that he was entitled to or denied other procedural rights set forth in the Drug Court handbook and performance contract he signed when he was admitted to the Washita/Custer County Drug Court program.  However, any violation by the Defendants of the provisions of the Oklahoma Drug Court Act, Washita/Custer County Drug Court's handbook, or the performance contract signed by Plaintiff, even if those rules are mandated by state law, are not a violation of constitutional due process.  See Nordlinger v. Hahn, 505 U.S. 1, 26 (1992)("A violation of state law does not by itself constitute a violation of the Federal Constitution.").

Consequently, the Motion to Dismiss by Defendants McPhearson, Thiessen, Kelly, Weedon, and Garcia with respect to Plaintiff's claims of state law or state administrative-based violations should be granted, and the claims based on violations of state law or state administrative guidelines should be dismissed with prejudice pursuant to Fed.R.Civ.P.

12(b)(6) and 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

## RECOMMENDATION

Based on the foregoing findings, it is recommended that the Motion to Dismiss by Defendants McPhearson, Thiessen, Kelly, Weedon, and Garcia (Doc. # 60) be GRANTED and that Plaintiff's claims, including the claims for injunctive and declaratory relief, under 42 U.S.C. § 1983 against these Defendants in their official and individual capacities be DISMISSED with prejudice pursuant to Fed.R.Civ.P. 12(b)(6) on the grounds of absolute judicial and prosecutorial immunity and for failure to state a claim for relief, and that Plaintiff's claims under the ADA against these Defendants in their individual capacities be DISMISSED with prejudice pursuant to Fed.R.Civ.P. 12(b)(6).   Alternatively, it is recommended that Plaintiff's claims against these Defendants in their individual capacities in counts five through eight be DISMISSED without prejudice as barred by Heck, supra, and that Defendants' Motion to Dismiss Plaintiff's claims against these Defendants in their official capacities under the ADA be DENIED without prejudice.  It is further recommended that Plaintiff's claims (1) under 42 U.S.C. § 1985(3) and § 1986 and (2) under Oklahoma law and "procedural guidelines" adopted by the Washita/Custer County Drug Court be DISMISSED with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim upon which relief may be granted.   It is also recommended that Plaintiff's claims against Defendants Bentley and Simmons Foods be DISMISSED without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for lack of jurisdiction.  Finally, it is

recommended that Plaintiff's motion seeking default judgment against Defendant Bentley (Doc. #133) be DENIED.

Plaintiff is advised of the right to file an objection to this Third Supplemental Report and Recommendation with the Clerk of this Court by _____ July 2nd, 2012, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72.  The failure to timely object to this Third Supplemental Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Third Supplemental Report and Recommendation does not dispose of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this ___11th___ day of ____June____, 2012.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE