IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

DENNIS MALIPURATHU, )
)
Plaintiff, )
)
) CIV-11-646-W
v. )
)
RAYMOND JONES, et al., )
)
Defendants. )

SIXTH SUPPLEMENTAL REPORT AND RECOMMENDATION

The only remaining federal claims in this protracted litigation filed by Plaintiff, a state

prisoner proceeding *pro se* and *in forma pauperis*, are his claims in Counts II and IV of his

Amended Complaint under Title II, 42 U.S.C. § 12132[1], of the Americans with Disabilities

Act ("ADA") against Defendants Weedon, Kelly, Garcia, Thiessen, and Jones in their official

---

[1]Plaintiff also cites 42 U.S.C. § 12111(9) in count II of his Amended Complaint. This provision defines the term "reasonable accommodation" for purposes of a Title I claim. However, actions in federal court to recover monetary damages under Title I of the Americans with Disabilities Act are barred by the Eleventh Amendment. Bd. of Trustees of the Univ. of Ala. v. Garrett, 531 U.S. 356 (2001). Because Plaintiff seeks only monetary damages as relief and the State of Oklahoma has not expressly waived its sovereign immunity, Okla. Stat. tit. 51, § 152.1, his claim cannot be construed as asserting a claim under Title I of the ADA.

1

capacities[2] and his claims against Defendant Bentley.[3] Amended Complaint, at 6-7. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).

Before the undersigned are: (1) the Motion for Summary Judgment by Defendants Weedon, Kelly, Garcia, and Thiessen (Doc. # 199) seeking judgment pursuant to Fed.R.Civ.P. 56 as to Plaintiff's remaining ADA claims in counts II and IV against these Defendants in their official capacities, to which Plaintiff has responded (Doc. # 216); (2) the Motion for Summary Judgment by Defendant Jones (Doc. # 204) seeking judgment pursuant to Fed.R.Civ.P. 56 as to Plaintiff's remaining ADA claims in counts II and IV against Defendant Jones in his official capacity, to which Plaintiff has responded (Doc. # 222); and (3) Plaintiff's Motion for Default Judgment as to Defendant Bentley (Doc. # 133).

I. Standard of Review - Motions for Summary Judgment

Summary judgment may be granted when there is no genuine dispute as to any

---

[2]"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).

[3]In previous Orders, United States District Judge West has dismissed the federal claims against or granted summary judgment for Defendants Jones, Hutton, Avera, Holland, Garcia, McPhearson, Thiessen, Kelly, Hendrickson, Weedon, and Enderle with respect to Plaintiff's claims in counts I, III, IV, V, VI, and VII of the Amended Complaint and with respect to Plaintiff's claim in count II of the Amended Complaint against Defendants Weedon, Kelly, Garcia, Thiessen, and Jones in their individual capacities. Order (Doc. # 51)(adopting Report and Recommendation); Order (Doc. # 155)(adopting in part Third Supplemental Report and Recommendation); Order (Doc. # 156)(adopting in part Fourth Supplemental Report and Recommendation); Order (Doc # 157)(adopting Fifth Supplemental Report and Recommendation). Plaintiff's state law claims also remain.

material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). In considering a motion for summary judgment, the court reviews the evidence and inferences drawn from the record in the light most favorable to the nonmoving party. Burke v. Utah Transit Auth. & Local, 462 F.3d 1253, 1258 (10th Cir. 2006)(quotation omitted), cert. denied, 550 U.S. 933 (2007). A dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are "facts which might affect the outcome of the suit under the governing law." Id. "At the summary judgment stage, a complainant cannot rest on mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." Burke, 462 U.S. at 1258 (internal quotation marks and citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(quotations omitted).

II. Background and Remaining Claims

Plaintiff is incarcerated in the custody of the Oklahoma Department of Corrections serving sentences of two, concurrent, 15-year terms of imprisonment for his convictions entered in the District Court of Custer County, Case No. CF-2007-296 and Case No. CF-2007-313. Petitioner appealed, and on May 2, 2012, the Oklahoma Court of Criminal

Appeals ("OCCA") affirmed the convictions and sentences.[4]

In his Amended Complaint filed July 13, 2011 (Doc. # 14), Plaintiff asserted claims arising out of his unsuccessful participation in and termination from the Washita/Custer County Drug Court program. In Count II of the Amended Complaint Plaintiff asserts that he is "(40%) permanent disable [sic]" as the result of a fractured back and that Defendants Weedon, Kelly, Garcia, Thiessen, Bentley, and Jones denied his rights under Title II of the ADA when they "fail[ed] to give notice or make reasonable accommodations within D.A.R.P. Foundation . . . and Drug Court program."[5] Amended Complaint, at 6.

Specifically, he alleges that Defendants Weedon, Kelly, Garcia, and Thiessen "fail[ed] to notify D.A.R.P. of Plaintiff's . . . disabilities before designation to this facility." Amended Complaint, at 6. Further, he alleges that "D.A.R.P. facility failed to provide for the following accommodations: a) entryway to front door is not handicap accessible; b) Commodes and showers are not equipped with handrails to accommodate disabled persons similar to Plaintiff[;] c) Plaintiff was forced to climb a ladder to sleep on a top bunk. (Ladder climbing is a restriction of Plaintiff's back condition.)." Amended Complaint, at 6.

Finally, he alleges "D.A.R.P. failed to notify Simmons Foods of Plaintiff's physical limitations, and the employer failed to make accommodations for the disability during

[4]http://www.oscn.net/applications/oscn/GetCaseInformation.asp?submitted=true&viewtype=case General&casemasterID=105403&db=Appellate (docket sheet in State of Oklahoma v. Dennis George Malipurathu, Case No. F-2010-867.

[5]The Court previously dismissed all of Plaintiff's claims against Defendant Enderle, who is also named in count II.

employment in September 13-24, 2009." Amended Complaint, at 7.

Plaintiff does not name "D.A.R.P." as a Defendant in this action. However, in count II Plaintiff names Defendants Jones among the other Defendants, and Plaintiff's *pro se* claims are generously construed to assert claims under the ADA against Defendant Jones, who is the President and C.E.O. of Drug and Alcohol Recovery Program ("D.A.R.P."). Defendant Jones' Motion for Summary Judgment will be addressed separately.

In count IV, Plaintiff alleges that "Defendant Weedon (in her unofficial capacity) was notified on January 5, 2009, in writing, [of] the conditions and problems concerning the Plaintiff's disability" and "Defendants Weedon, Kelley [sic], . . . and Thiessen, manifest a decision concerning the Plaintiff's permanent disability . . ., failing to protect the Plaintiff of his rights and designate Plaintiff to an incompatible facility."[6] Amended Complaint, at 8. These allegations are generously construed to assert claims against Defendants Weedon, Kelly, and Thiessen under Title II of the ADA as well.

As relief for the Plaintiff's claims under the ADA, Plaintiff seeks "$1,000,000 to be evenly distributed among the named Defendants for discriminating upon [sic] the Plaintiff due to his disability." Amended Complaint, at 19.

III. Defendants Weedon, Kelly, Garcia, and Thiessen's Motion for Summary Judgment

Defendants Weedon, Kelly, Garcia, and Thiessen seek summary judgment with respect to Plaintiff's remaining ADA claims against them in counts II and IV in their official

---

[6]The Court previously dismissed all of Plaintiff's claims against Defendant Enderle, who is also named in this claim.

capacities as judges and Custer County officials. Their Motion includes a statement of undisputed facts. In consideration of the statement of undisputed facts and Plaintiff's responsive pleading, the following material facts are not disputed by these parties:

1. On November 27, 2007, Plaintiff sustained an on-the-job injury to his back and left shoulder while working as an automobile mechanic.

2. In December 2008, Plaintiff was arrested for two felony charges in Custer County and detained in the Custer County jail. On January 5, 2009, Plaintiff wrote a letter to Defendant Judge Weedon and informed Judge Weedon of his injury, his worker's compensation case arising from that injury, and his need for continued treatment. Judge Weedon sent a copy of the letter to the Custer County District Attorney, Sheriff, and Oklahoma Indigent Defense System and filed the original of the letter in criminal case No. CF-07-313.

3. Plaintiff posted bond in his felony cases on or about January 26, 2009, and was released from detention.

4. On February 5, 2009, Plaintiff appeared in Oklahoma's Worker's Compensation Court and requested the Court approve a Joint Petition setting his claim. The parties stipulated Plaintiff had permanent disability totaling 40 % to his back, left shoulder, and neck.

5. In approving the Joint Petition, Plaintiff was placed under oath and questioned about his ability to work. On February 5, 2009, Plaintiff assured the Court that he was physically able to return to work and had no need for vocational training.

6. In May 2009, Plaintiff appeared in Custer County District Court and requested to participate in the Washita/Custer County Drug Court program. On May 1, 2009, Assistant District Attorney (and former Defendant) Garcia approved Plaintiff's application to be considered for Drug Court participation. On May 7, 2009, Plaintiff was evaluated for the Drug Court program by former Defendant Enderle, a licensed drug and alcohol counselor employed by New Hope of Mangum. Plaintiff was asked by Mr. Enderle about his medical and employment status. Plaintiff informed Mr. Enderle that he had been hospitalized but he did not express any reservation concerning his ability to work. Plaintiff also informed Mr. Enderle that he had completed an AS degree and had taken courses in automotive upholstery and auto mechanics. Plaintiff stated his normal employment pattern was working more than 35 hours per week.

7. On May 14, 2009, Plaintiff appeared again in Custer County District Court and, with his counsel present, waived his right to preliminary hearing and advised the court of his desire to voluntarily enter the Washita/Custer County Drug Court program.

8. On May 18, 2009, with the assistance of his defense counsel, Plaintiff entered a plea of guilty to the offenses of Distribution of Controlled Dangerous Substance within 2000 Feet of a Child Care Facility and Conspiracy to Deliver a Controlled Dangerous Substance. Plaintiff's plea and sentencing agreement included his diversion into the Washita/Custer County Drug Court program. The terms of the agreement provided that if he successfully completed the Drug Court program he would be sentenced to two, concurrent, six-year suspended terms of imprisonment.

9.  On the same date, May 18, 2009, Plaintiff signed a Performance Contract with the Washita/Custer County Drug Court program.  Plaintiff's obligations under the Performance Contract included requirements that he maintain or seek employment unless otherwise ordered by the judge, submit to drug testing, actively engage in treatment, and maintain contact with the Drug Court team members.

10.  Plaintiff appeared in the Washita/Custer County Drug Court on May 20, 2009, before Defendant Judge Kelly, who directed Plaintiff to obtain employment within a week. Plaintiff returned to the Drug Court on May 27, 2009, and informed Judge Kelly that he was still looking for a job.  By June 8, 2009, Plaintiff was working as a cook at Sonic.  On June 15, 2009, Plaintiff reported that he was looking for a better job where he could use his skills as a mechanic and that he was frustrated by the lack of money he was making at his Sonic job.  On June 24, 2009, Plaintiff lost his Sonic job.  Plaintiff tested positive for alcohol in a drug test collected on June 19, 2009, for the Drug Court.

11.  On July 1, 2009, Judge Kelly ordered a therapeutic intervention, directing Plaintiff to be held in the county jail until a long-term treatment bed became available.

12.  While he was detained in the Custer County jail, Plaintiff wrote two letters to the Washita/Custer County Drug Court staff in which he protested the failed drug/alcohol test. Plaintiff also complained about his job at Sonic and stated he hoped to find a job as a mechanic.  Plaintiff did not complain about his work requirements or seek an accommodation in this correspondence.

13.  On July 23, 2009, Plaintiff was transported to D.A.R.P. for long-term treatment.

Plaintiff did not inform the Drug Court staff about any accessibility or disability problems he was experiencing while he was at D.A.R.P.[7]

14. While at D.A.R.P., Plaintiff held three or four different jobs. At D.A.R.P.'s facility in Tahlequah, Oklahoma, Plaintiff first worked in demolition, driving a forklift and stacking crates. This job lasted eight to ten days and ended when it was completed. Plaintiff then worked at a welding facility for his second job, where he was required to push a broom and grind. Plaintiff was terminated from this job when he had a conflict with another individual. Plaintiff then worked as a welder at a stainless steel plant but was terminated from this job, and the reason given for this termination was shoddy workmanship. After losing this job, Plaintiff was transferred to D.A.R.P.'s facility in Decatur, Arkansas, where he was employed in a chicken cooler house. Plaintiff's employment at this facility was terminated after 10 days, and he was discharged from D.A.R.P.

15. When Plaintiff was discharged from D.A.R.P. on September 25, 2009, he was given a bus ticket and told to immediately report to the Washita/Custer County Drug Court Coordinator. When Plaintiff did not immediately report to the Drug Court Coordinator or undergo a drug test, he was directed to report to the Custer County Jail for detention until another long-term treatment bed became available.

16. On or about October 7, 2009, Defendant Thiessen, the Washita/Custer County

---

[7]Although Plaintiff disputes this statement, Plaintiff relies solely on a handwritten letter dated September 22, 2009, post-marked September 25, 2009, and file-stamped as received by the district court on October 7, 2009, after Plaintiff was discharged from D.A.R.P. on September 25, 2009. This letter does not create a disputed issue of fact regarding the above-described statement.

Drug Court Administrator, received a letter from Plaintiff dated September 22, 2009, in which Plaintiff complained about D.A.R.P. and his final job placement at the Decatur, Arkansas facility. This letter is post-marked September 25, 2009, and file-stamped as received by the district court on October 7, 2009.

17. On November 13, 2009, Plaintiff was transported from the Custer County Jail to the New Hope treatment facility in Mangum, Oklahoma, for further in-patient treatment. Plaintiff remained at New Hope until January 25, 2010, when he was discharged from the facility. Plaintiff had no complaints regarding his disability or failure to accommodate his disability during his stay at New Hope.

18. On January 27, 2010, Plaintiff was suspended from the Drug Court program by Judge Weedon. In the court minute order, Judge Weedon noted that Plaintiff had failed to complete treatment and was not amenable to treatment.

19. On February 2, 2010, prosecutors filed an Application to Terminate Drug Court Participation and Sentence in Plaintiff's felony cases. On May 15, 2010, the application was amended. On May 17, 2010, after a full hearing on the merits, Custer County District Judge (and former Defendant) Goodwin granted the State's application, terminated Plaintiff's Drug Court participation, and sentenced him to two, concurrent, 15-year terms of imprisonment, in accordance with the plea agreement Plaintiff previously entered.

In support of their Motion for Summary Judgment, Defendants Weedon, Kelly, Garcia, and Thiessen assert that Plaintiff's Title II ADA claims against them seek to challenge Plaintiff's Custer County convictions and sentences and are barred from review

under the favorable termination rule in <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), and its progeny.  Defendants' argument, which requires an extended analysis, has merit.

Title II of the ADA prohibits discrimination by public entities against individuals with disabilities: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. <u>See</u> <u>Pennsylvania Dep't of Corrections v. Yeskey</u>, 524 U.S. 206, 210-212 (1998)(holding Title II of ADA applies to state prisons and that disabled prisoners are "qualified" to receive the benefits and services of state prisons if they meet eligibility requirements, despite the fact that prisoners may not always participate voluntarily in services or programs).

Thus, Title II of the ADA prohibits any public entity from discriminating against "qualified" persons with disabilities in the provision or operation of public "services, programs, or activities." 42 U.S.C. § 12132. The Act defines the term "public entity" to include state and local governments, as well as their agencies and instrumentalities. 42 U.S.C. § 12131(1). Persons with disabilities are "qualified" if they, "with or without reasonable modifications to rules, policies, or practices, . . . mee[t] the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).  When these requirements are met, in Title II "Congress require[s] the States to take reasonable measures to remove architectural and other barriers to accessibility." <u>Tennessee v. Lane</u>, 541 U.S. 509, 531 (2004)(citing 42 U.S.C.

§12131(2)).

Considering the allegations in the Amended Complaint, the only public service, program, or activity in which Plaintiff participated was the Washita/Custer County Drug Court program. This program is undeniably a public entity for purposes of Title II of the ADA.[8] Under Title II of the ADA, Plaintiff must be a disabled individual who is "qualified" to seek damages, and he would be "qualified" under the statute if he met "the essential eligibility requirements for the receipt of services or the participation in programs or activities provided" by the Drug Court program. 42 U.S.C. § 12131(2).

Plaintiff alleges in his Amended Complaint that he is "40%" disabled due to a back impairment. Amended Complaint, at 6. There is no dispute that in a proceeding conducted in Oklahoma Workers' Compensation Court Plaintiff was found to have a disability totaling 40% due to work-related injuries in his back, shoulders, and neck. It is also not disputed that Plaintiff's application to participate in the Drug Court program was accepted and that he signed the Performance Contract required for his participation. Thus, the Court should assume, and Defendants do not dispute, that Plaintiff was a "qualified" individual with a

---

[8]The Oklahoma Drug Court Act authorizes each district court in the State to establish a Drug Court program. Okla. Stat. tit. 22, § 471.1(B). In Oklahoma, a district court's "Drug Court Team constitute political subdivisions of the state." Burgess v. State, 243 P.3d 461, 463 (Okla. Crim. App. 2010). "Drug Court is a type of diversionary sentence, which expedites the criminal case and requires successful completion of the plea agreement in lieu of incarceration." Looney v. State, 49 P.3d 761, 763 (Okla. Crim. App. 2002). "To the extent that a defendant's sentence is delayed pending his participation in Drug Court, these cases are comparable to situations where a defendant receives a deferred sentence. The termination of defendant from Drug Court is analogous to an acceleration of a deferred sentence. . . . The consequence of the termination from Drug Court is to impose the sentence negotiated in the plea agreement." Id. at 763-764.

disability for purposes of Title II of the ADA.

Plaintiff alleges that he was prevented from participating in the Washita/Custer County Drug Court program because Defendants failed to provide reasonable accommodations for his disability due to his previous back injury. Plaintiff focuses this claim almost entirely on his alleged inability to perform the requirements of the job he was given at the D.A.R.P. drug treatment facility in Decatur, Arkansas. In Plaintiff's responsive pleading to Defendant Jones' Motion, Plaintiff alleges that his "discharge from the [D.A.R.P.] facility IS by reason of his disability, the inability to maintain employment." Response (Doc. # 204), at 5. Plaintiff also alleges in his Amended Complaint that the "D.A.R.P. facility" did not have other accommodations for his disability, including a handicapped-accessible front door, "handrails" on toilets and showers, and a requirement that he "sleep on a top bunk." Amended Complaint, at 6.

Plaintiff's Title II claim for monetary damages based on his employment during his D.A.R.P. treatment period may be reviewed only if success on this claim would not call into question the validity of his Custer County convictions and sentences. In Heck, the Supreme Court recognized that damages may not be recovered in a 42 U.S.C. § 1983 action "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless the plaintiff first proves "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C.

§2254." Heck, 512 U.S. at 487.  See Edwards v. Balisok, 520 U.S.641, 643 (1997)(applying Heck's rule to prison disciplinary convictions).

In Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005), the Supreme Court clarified the rule in Heck and held that "a state prisoner's § 1983 action is barred (absent prior invalidation) - no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) - if success in that action would necessarily demonstrate the invalidity of confinement or its duration."   The key, as recognized in Dotson, is whether success on the plaintiff's claim would mean immediate release from confinement or a shorter stay in prison. Id. at 82.  A case "challenging a sentence seeks a prisoner's 'release' in the only pertinent sense: It seeks invalidation (in whole or in part) of the judgment authorizing the prisoner's confinement." Id. at 83.

Because his ADA claim related to his failure to maintain employment at the D.A.R.P. treatment facility is intertwined with Plaintiff's state court criminal proceeding, the findings of the OCCA in Petitioner's appeal are of utmost relevance in reviewing the dispositve motion at issue herein.  Therefore, the undersigned takes judicial notice of the Court's own record in a 28 U.S.C. § 2254 proceeding filed by Plaintiff in this Court, Malipurathu v. Vaughn, Case No. CIV-12-458-M, which includes the summary opinion issued by the OCCA in Petitioner's appeal. See State Farm Mut. Auto. Ins. Co. v. Boellstorff, 540 F.3d 1223, 1226 n. 7 (10th Cir. 2008)(recognizing courts may take judicial notice of documents from the public record); Van Woundenberg v. Gibson, 211 F.3d 560, 568 (10th Cir. 2000)("[T]he court

14

is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record."); St. Louis Baptist Temple, Inc. v. Federal Deposit Ins. Corp., 605 F.2d 1169, 1172 (10th Cir. 1979)("[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").

In that decision, the OCCA found with respect to Plaintiff's claim that his termination from the Washita/Custer County Drug Court program was premature that

> Malipurathu admits that he was aware of the terms and conditions of the Drug Court program when he agreed to participate in the program. Given numerous opportunities to comply with the terms and conditions of the program, Malipurathu was sanctioned at least twice during the duration of his program participation. He also acknowledges that he was given several chances to complete the program after being terminated from three jobs, when program policy dictated that termination should result upon being terminated from one job. The record is replete with testimony and reports that Malipurathu was uncooperative, disruptive, unwilling to take instruction, disobedient and a distraction to staff and other Drug Court participants. We find no merit in the claim that his termination from the program was premature.

Malipurathu v. Vaughn, Case No. CIV-12-458-M (Doc. # 15, Ex. 3)(See "Court's Exhibit A" attached hereto). Another of Plaintiff's claims in his appeal was that he was denied effective assistance of counsel in his Washita/Custer County Drug Court termination proceeding because his "counsel failed to introduce records explaining his back surgery and information detailing the extent of his medical limitations" which "would have explained why he was unable to comply with the gainful employment criteria of the Drug Court

program." Id.  In rejecting this claim, the OCCA found that

> [t]he evidence . . . reveals that he was terminated from two jobs during his drug court tenure for his inability to get along with others and for performing shoddy work.  He was recommended for termination from the Drug Court program because of his uncooperative attitude, his refusal to participate, his unwillingness to accept responsibility for his actions, his disruptive influence on other Drug Court participants, his disrespectful attitude toward staff, as well as his inability to maintain gainful employment.

Id.

Plaintiff alleges in counts II and IV, in part, that he was terminated from the Drug Court program because one or more Defendants did not provide reasonable modifications for his disability in connection with the employment requirement of his Drug Court performance contract.  As indicated in the OCCA's decision in Plaintiff's appeal, the OCCA found that Plaintiff's Drug Court termination was partially based on his failure to maintain employment, and the court rejected an ineffective assistance of counsel claim based on his counsel's failure to challenge his inability to comply with the employment requirement on medical grounds.

Under these circumstances, the Plaintiff has alleged a "hybrid" case, first recognized by the Supreme Court in Muhammad v. Close, 540 U.S. 749 (2004), in which he is "seeking relief unavailable in habeas, notably damages, but on allegations that not only support a claim for recompense, but imply the invalidity either of an underlying conviction or of a particular ground for denying release short of serving the maximum term of confinement." Id. at 750-751.  Plaintiff raised a claim in his appeal based on the same allegations he makes

herein, that his Drug Court termination and resulting sentences were invalid because he was not provided accommodations for his physical limitations resulting in his "inability to maintain gainful employment," as required under his Drug Court performance contract. Plaintiff's success on his Title II ADA claim would provide fodder for a habeas claim because he has already asserted in his state court appeal that he was denied effective assistance of counsel due to his counsel's failure to present evidence at his Drug Court termination proceeding of his "back surgery and information detailing the extent of his medical limitations" which "would have explained why he was unable to comply with the gainful employment criteria of the Drug Court program."

In Plaintiff's responsive pleading, Plaintiff's intent to circumvent <u>Heck</u>'s favorable termination rule becomes clear. For instance, Plaintiff alleges he could not be terminated from the Drug Court program because he did not have three relapses and D.A.R.P. was not a certified facility under state law "to ensure the opportunity and benefits of successful treatment, education, and rehabilitation as a drug court participant." Response (Doc. # 216), at 11-12.

Plaintiff denies that he is challenging the validity of his convictions and sentences. Instead, Plaintiff asserts that he is arguing he was "denied the benefits and opportunities of successful treatment, education, and rehabilitation because of Plaintiff's disabilities." Response (Doc. # 216), at 14-16. But it is clear, however, with respect to his Title II ADA claim related to his employment during his D.A.R.P. treatment period, that <u>Heck</u>'s favorable termination rule bars judicial review of these claims unless and until his convictions and

sentences have been invalidated or overturned.

With respect to Plaintiff's remaining ADA claims against Defendants Weedon, Kelly, Garcia, and Thiessen concerning the asserted discrimination due to the lack of structural modifications at D.A.R.P. facilities, Defendants Weedon, Kelly, Garcia, and Thiessen are entitled to summary judgment.

Title II incorporates § 505 of the Rehabilitation Act of 1973, codified at 29 U.S.C. §794a, which authorizes private citizens to bring suits for money damages. 42 U.S.C. §12133. However, the Supreme Court has held that Title II validly abrogates a state's sovereign immunity only "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment." United States v. Georgia, 546 U.S.151, 159 (2006)(emphasis in original). Thus, in order to overcome the State of Oklahoma's sovereign immunity and obtain monetary damages against Defendants in their official capacities, Plaintiff must demonstrate conduct by Defendants that would establish an actual violation of the Fourteenth Amendment. If Plaintiff is alleging misconduct that violates Title II but does not violate the Fourteenth Amendment, he must demonstrate that "Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." Id.

Plaintiff has not alleged procedural or substantive due process deprivations in counts II and IV of the Amended Complaint. Rather, Plaintiff alleges Defendants Weedon, Kelly, Garcia, and Thiessen (and the remaining Defendants Bentley and Jones) violated his equal protection rights by treating him differently because of his disability. See Plaintiff's

Response (Doc. # 216), at 23. The Supreme Court has concluded that "States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational. They could quite hardheadedly - and perhaps hardheartedly - hold to job-qualification requirements which do not make allowance for the disabled." Bd. of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 367-368 (2001).

In this case, the Washita/Custer County Drug Court program's Performance Contract required that Plaintiff comply with any vocational or treatment requirements prescribed by the Drug Court. There is an obvious rational relationship between these requirements and the Drug Court's rehabilitation objective. See Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432 (1985)(where plaintiff is not member of suspect class or where conduct alleged does not involve fundamental right, courts require only rational relationship between differential treatment of similarly-situated individuals and a legitimate government interest).

Plaintiff's remaining Title II ADA claims focus on the assertion that Defendants discriminated against him by failing to provide certain structural modifications at the D.A.R.P. treatment facility. See Amended Complaint, at 6.[9] However, Plaintiff has not put forth any evidence that his disability required any specific structural modifications. Nor has Plaintiff demonstrated a material issue of fact as to whether Defendants Weedon, Kelly, Garcia, or Thiessen discriminated against him because of his disability.

---

[9]In this regard, Plaintiff's assertion that D.A.R.P.'s lack of certification under state law as a drug treatment facility also somehow supports an ADA claim is without merit.

First, Plaintiff contends that he "notified [Defendant Weedon] in writing of Plaintiff's condition and limitations regarding the effects of surgery." Plaintiff's Response (Doc. # 216), at 1. As support for this statement, Plaintiff refers to his handwritten letter addressed to Defendant Judge Weedon dated January 5, 2009, and file-stamped January 7, 2009, by the District Court of Custer County. In this letter, Plaintiff stated vaguely that he had a "deteriorating condition" and "extreme back pain" because of certain conditions he was experiencing in the Custer County Jail. He requested to be released from jail on his own recognizance. Plaintiff's Response (Doc. # 216), Ex. 1. Plaintiff's letter to Judge Weedon did not indicate that any physical limitations restricted Plaintiff's ability to participate in the Drug Court program, and he did not request specific accommodations during the Drug Court program, which he did not enter until May 2009.[10] Even assuming the letter notified Defendant Weedon of a back injury, the letter to Defendant Weedon was too remote from the alleged discrimination during his treatment period at D.A.R.P. in July to September 2009 to show intentional discrimination or to create any inference of unintentional, or "disparate impact," discrimination due to a disability from the lack of structural modifications at the

---

[10]Moreover, Plaintiff's assertion that his back injury resulted in work-related limitations is inconsistent with his own sworn statements in another forum. It is undisputed that in February 2009 Plaintiff appeared in the Oklahoma Workers' Compensation Court and testified that he sustained an injury to his back, neck, and left shoulder in November 2007 but that he had agreed to a settlement of his workers' compensation claim and, more significantly, that he was physically able to return to his previous mechanic job and did not need vocational training.

D.A.R.P. treatment facility.[11]

Plaintiff next contends that his Drug Court application provided notice of his need for accommodations. In this application, Plaintiff stated that he was "30 % disabled" as a result of an accident in November 2007 in which an "SUV fell on him - injured back." Special Report (Doc. # 59), Exs. 2, 4. However, Plaintiff's Drug Court application did not indicate that any physical limitations restricted Plaintiff's ability to participate in the Drug Court program, and he did not request specific accommodations with respect to the Drug Court program's requirements, which were clearly set forth in the Performance Contract Plaintiff signed in May 2009. Special Report, Ex. 56. Moreover, it is not disputed that during his Drug Court interview with former Defendant Enderle Plaintiff stated his normal employment pattern was working more than 35 hours per week. In light of his acceptance of the terms of the Performance Contract and his statements to Mr. Enderle, Defendants' failure to make accommodations did not constitute discrimination, either intentional or unintentional, "by reason of" Plaintiff's disability.

Finally, Plaintiff relies on a letter he sent to Defendant Thiessen as evidence that Defendants discriminated against him by failing to provide modifications. Plaintiff wrote to Defendant Thiessen, the Drug Court's coordinator, in September 2009. It is undisputed that on or about October 7, 2009, Defendant Thiessen, the Washita/Custer County Drug Court

---

[11]It is not clear from his allegations whether Plaintiff is claiming intentional or unintentional, i.e., "disparate impact," discrimination. See Chaffin v. Kansas State Fair Bd., 348 F.3d 850, 859-860 (10th Cir. 2003)(holding Title II of the ADA was designed "to remedy a broad, comprehensive concept of discrimination against individuals with disabilities, including disparate impact discrimination").

Administrator, received a letter from Plaintiff dated September 22, 2009, in which Plaintiff complained about his final job placement at the Decatur, Arkansas facility. This letter is post-marked September 25, 2009, and file-stamped as received by the district court on October 7, 2009. Plaintiff was discharged from D.A.R.P. on September 25, 2009. On September 30, 2009, presiding Drug Court Judge Kelly ordered that Plaintiff undergo a second "therapeutic intervention" and directed that Plaintiff remain in the county jail until his transfer to another treatment facility. Special Report, Ex. 18. Thus, the letter to Defendant Thiessen cannot be construed as a request for accommodations at the D.A.R.P. treatment facility (the only facility at which Plaintiff claims he was the subject of discrimination due to the lack of structural modifications) as it was not received by the Drug Court staff until after Plaintiff was discharged from D.A.R.P. and directed to attend a second treatment facility. Thus, Defendants' failure to make modifications did not constitute discrimination, either intentional or unintentional, "by reason of" Plaintiff's disability.

Plaintiff completed an intake form when he applied to the D.A.R.P. facility which indicated he had "titanium rods/pins/screws" in his back. Special Report (Att. 17)(sealed). Defendant Bentley testified at Plaintiff's Drug Court termination hearing that he was aware Plaintiff had a previous back injury. Special Report, Att. 28, at 14. Without any indication of specific limitations stemming from the back injury, the intake form cannot be construed as a request for modifications at D.A.R.P. Thus, Defendants' failure to make modifications did not constitute discrimination, either intentional or unintentional, "by reason of" Plaintiff's disability.

Plaintiff has not demonstrated a material issue of fact concerning his Title II ADA claim against Defendants Weedon, Kelly, Garcia, and Thiessen for damages because he has not demonstrated misconduct by any Defendant that actually violates the Fourteenth Amendment. As previously found, if Plaintiff is alleging misconduct that violates Title II but does not violate the Fourteenth Amendment, he must demonstrate that "Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." Id. Plaintiff has made no such demonstration. Consequently, Defendants Weedon, Kelly, Garcia, and Thiessen's Motion for Summary Judgment should be granted.

IV. Defendant Jones' Motion for Summary Judgment

Defendant Jones seeks summary judgment with respect to Plaintiff's remaining claim against him in counts II and IV in his official capacity as the President and C.E.O. of D.A.R.P. The Motion includes a statement of undisputed facts, although some of those statements, for instance, statements related to Plaintiff's previous claims of religious-based discrimination, are not material to the remaining ADA claim against Defendant Jones. In consideration of Defendant Jones' statement of undisputed facts and Plaintiff's responsive pleading, the following material facts are not disputed by these parties:

1. Defendant Raymond Jones is the President and C.E.O. of Drug and Alcohol Recovery Program, Inc. (D.A.R.P.), a not-for-profit corporation founded to assist individuals in learning life skills to make better choices and avoid future involvement with drugs and alcohol.

2. On May 18, 2009, Plaintiff pleaded guilty in the District Court of Custer County,

Oklahoma, to the offense of Distribution of Controlled Dangerous Substance within 2000 Feet of a Child Care Center, after former conviction of a felony, and chose to participate in the Washita/Custer County Drug Court program.

3. Defendant Raymond Jones met Plaintiff during Plaintiff's first week at D.A.R.P. and spoke to Plaintiff again before transferring him to Decatur, Arkansas.

4. Defendant Jones was not aware of any physical limitations of Plaintiff limiting Plaintiff's ability to perform the essential functions of his job. D.A.R.P. has provided accommodations to other participants in the past without issue. Had Plaintiff made known his inability to perform the essential functions of his job, D.A.R.P. could have then referred Plaintiff to an alternative program.

5. Defendant Jones was not aware of Plaintiff's physical limitations that prevented Plaintiff from bunking in Plaintiff's assigned bunk. Had Plaintiff made his physical limitations known, Plaintiff would have been assigned to a different bed to accommodate his physical needs.

6. Plaintiff stated when he told Perry Jamison at the Tahlequah D.A.R.P. facility about his back, Plaintiff was moved to a bottom bunk and that the issue was "addressed immediately."

7. Plaintiff stated that he "tried to steer clear" of physical movements he could not perform while working in Oklahoma.

8. Plaintiff refers to disagreements and admits that these disagreements were not related to his disability because he did not raise the issue of his claim of disability.

9. Plaintiff admits that he did not lose a job while working in Oklahoma because of his disability.

10. Plaintiff was not discharged from the Drug Court program after leaving D.A.R.P. On September 30, 2009, Plaintiff learned that his departure from D.A.R.P. was not the end of his participation in the Drug Court program and that he would be attending New Hope in Mangum, Oklahoma.

11. When Plaintiff left the D.A.R.P. program, he was then sent to New Hope in Mangum, Oklahoma. He failed to complete this program.

Defendant Jones' arguments in his Motion for Summary Judgment are directed toward Title I of the ADA, and not Title II of the ADA. Plaintiff does not, however, assert a claim under Title I of the ADA, which addresses employment discrimination. Plaintiff's Title II ADA claim may be broadly construed to assert a claim against Defendant Jones in his official capacity as the President and CEO of D.A.R.P., which contracted with the Washita/Custer County Drug Court program to provide therapeutic treatment to Plaintiff as a condition of his Drug Court participation. See 28 C.F.R. § 35.130(b)(1)("A public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability . . . [d]eny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service."). However, the Tenth Circuit Court of Appeals has held in an unpublished decision that Title II of the ADA does not generally apply to private corporations that operate prisons. Phillips v. Tiona, 2013 WL 239891 (10th Cir. 2013)(unpublished op.). See Edison v. Douberly, 604 F.3d 1307, 1310

(11th Cir. 2010)(holding "a private corporation is not a public entity merely because it contracts with a public entity to provide some service").

In any event, even assuming that Defendant Jones may be sued in his official capacity under Title II of the ADA, as Defendant Jones asserts in his Motion and for the same reasons previously expressed in recommending that Defendants Weedon, Kelly, Garcia, and Thiessen's Motion for Summary Judgment be granted, (1) Plaintiff's claims related to his employment during his D.A.R.P. treatment period are barred by Heck's favorable termination rule and (2) Plaintiff has not demonstrated a material issue of fact with respect to whether Defendant Jones discriminated against him because of his disability. Accordingly, Defendant Jones' Motion for Summary Judgment as to Plaintiff's remaining Title II ADA claims should be granted.

V. <u>Motion for Default Judgment as to Defendant Bentley</u>

On May 16, 2012, Plaintiff filed a Motion for Judgement by Default against Defendant Mack Bentley (Doc. # 133). In his Amended Complaint, Plaintiff describes Defendant Bentley as a resident of the state of Arkansas and the human relations director of D.A.R.P. In the Third Supplemental Report and Recommendation, the undersigned recommended that Plaintiff's cause of action against Defendant Bentley be dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for lack of jurisdiction. However, this recommendation was not adopted and was remanded for further consideration. Order (Doc. # 155), at 4.

"Personal jurisdiction over [a] defendant is required before a default judgment in a

civil case may be entered." <u>Bixler v. Foster</u>, 596 F.3d 751, 761 (2010). "Where, as in Oklahoma, the state long arm statute supports personal jurisdiction to the full extent constitutionally permitted, due process principles govern the inquiry" into whether a court has personal jurisdiction over a defendant. <u>Shrader v. Biddinger</u>, 633 F.3d 1235, 1239 (2011).

The Supreme Court has long recognized an individual's liberty interest pursuant to the Due Process Clause not to be subjected to the binding judgments of a forum with which he or she has no meaningful "contacts, ties, or relations." <u>Internat'l Shoe Co. v. Washington</u>, 326 U.S. 310, 319 (1945). When a court seeks to assert jurisdiction over an out-of-state defendant who has not consented to suit there, the defendant has "fair warning" consistent with the Due Process Clause of potential liability if the defendant has "purposefully directed" his or her activities at residents of the forum state, and "the litigation results from alleged injuries that arise out of or relate to those activities." <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472-473 (1985)(quotations and citations omitted). The "touchstone" for this determination is "whether the defendant purposefully established minimum contacts in the forum State." <u>Id.</u> at 474 (quotations and citation omitted).

It is the Plaintiff's burden to establish the Court's jurisdiction over the Defendants. <u>Melea, Ltd. v. Jawer SA</u>, 511 F.3d 1060, 1065 (10th Cir. 2007). "The plaintiff may meet this burden by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." <u>Id.</u> (quotations and citation omitted).

In his Motion seeking a default judgment as to Defendant Bentley, Plaintiff asserts

that Defendant Bentley has decision-making responsibility for D.A.R.P. Other evidence in the record reflects that D.A.R.P. is a private therapeutic treatment facility, and that Plaintiff was transferred to D.A.R.P.'s Tahlequah, Oklahoma facility in July 2009 by the Washita/Custer County Drug Court after he failed to comply with the rules of the Drug Court performance contract he signed in May 2009. Plaintiff asserts that Bentley was a "subordinate" to Defendant Jones, who the record reflects is the President and CEO of D.A.R.P. Plaintiff asserts that Bentley was responsible for "in-take data [and] admissions" and that he was a liaison to the Drug Court. Plaintiff further asserts that Bentley appeared and testified at Plaintiff's Drug Court termination hearing in the Custer County District Court.

None of these allegations reflect intentional actions expressly aimed at the forum state. Mr. Bentley is an employee of a private drug treatment facility that contracted with a Drug Court program in Oklahoma to provide treatment for Plaintiff. Plaintiff's D.A.R.P. treatment period spanned a three-month period in 2009. The only injury described by Plaintiff is his termination from Drug Court, and Defendant Bentley had no control over the disposition of the Drug Court termination proceeding. This is the extent of the alleged contacts between Bentley and the state of Oklahoma. As Plaintiff did not make a prima facie showing that could support the exercise of personal jurisdiction over Defendant Bentley, his motion for default judgment should be denied, and Defendant Bentley should be dismissed from the action for lack of personal jurisdiction.

VI. <u>State Law Claims</u>

With respect to Plaintiff's remaining claims that Defendants are liable to him for violations of Oklahoma law, there are no remaining federal claims in this case. Under these circumstances, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law-based claims. 28 U.S.C. § 1367(c)(3). <u>See</u> <u>Smith v. City of Enid</u>, 149 F.3d 1151, 1156 (10th Cir. 1998)(recognizing "[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims").

<u>RECOMMENDATION</u>

Based on the foregoing findings, it is recommended that (1) the Motion for Summary Judgment by Defendants Weedon, Kelly, Garcia, and Thiessen (Doc. # 199) be GRANTED and that judgment issue in favor of these Defendants and against the Plaintiff; (2) the Motion for Summary Judgment by Defendant Jones (Doc. # 204) be GRANTED and that judgment issue in favor of Defendant Jones and against the Plaintiff; (3) the Motion for Judgment by Default Against Defendant Mack Bentley (Doc. # 133) be DENIED and that Defendant Bentley be DISMISSED from the action for lack of personal jurisdiction; and (4) Plaintiff's state-law claims should be dismissed under 28 U.S.C. § 1367(c)(3).

Plaintiff is advised of the right to file an objection to this Sixth Supplemental Report and Recommendation with the Clerk of this Court by _____June 3[rd]_____, 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Sixth Supplemental Report and Recommendation would waive appellate review of the

recommended ruling. <u>Moore v. United States</u>, 950 F.2d 656 (10th Cir. 1991); <u>cf.</u> <u>Marshall v. Chater</u>, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Sixth Supplemental Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this ___13[th]___ day of ____May____, 2013.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE